## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JEN AUSTIN,

      **Plaintiff,**

                                        **CASE NO.:**

**vs.**

**METRO DEVELOPMENT GROUP, LLC and**
**JOHN RYAN, an individual,**

      **Defendants.**

-------------------------------------------------/

### COMPLAINT and DEMAND FOR JURY TRIAL

Plaintiff, Jen Austin ("Plaintiff"), sues Defendants, Metro Development Group, LLC ("Metro") and John Ryan, individually ("Ryan"), and in support of her claims states as follows:

### INTRODUCTION AND JURISDICTION

1.     This is a civil action by Plaintiff against her former employer for monetary damages for the fraudulent filing of information returns and incorrect amounts under 26 U.S.C. § 7434 *et. seq.*, for violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501. 201 *et seq.*, for unpaid wages under Florida common law, for violations of the Florida Whistleblower Act ("FWA") §448.101-105 *et seq.*, for defamation, and for declaratory relief pursuant to Fla. Stat. §86.021, in addition to seeking declaratory relief arising out of the improper and illegal classification of Plaintiff as an "independent contractor."

2.     Plaintiff, Jen Austin, is a resident of Hillsborough County, Florida and performed all work for Metro in Hillsborough County.

3.     Defendant, John Ryan, is an individual who resides in Pinellas County, Florida. He was and currently is the CEO of Metro and works in Hillsborough County.

4.     Defendant Metro is an LLC with its principal place of business located at 2502 N. Rocky Point Drive, Suite 1050, Tampa, FL  33607.  At all relevant times, it had more than 25 employees.

5.     Jurisdiction of this Court is involved under 26 U.S.C. § 7434 *et. seq.*  This Court has jurisdiction pursuant to 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over the state law claims arising under the laws of the State of Florida pursuant to 28 U.S.C. § 1367(a).

6.     Venue is proper in this judicial district under 28 U.S.C. §1391 because the unlawful actions complained of in this Complaint arose in the Middle District of Florida, where Plaintiff was employed.

7.     All conditions precedent to this action have been performed, satisfied, or waived.

## STATEMENT OF FACTS

8.     Plaintiff worked for Metro as its Marketing Director but was misclassified as an "independent contractor." All indicia of her employment, as discussed below, shows that she was misclassified by Defendant Metro because the Company wanted to save money and deprive Plaintiff of benefits to which she would have been entitled to as an employee.

9.     According to its webpage, Metro is engaged in the following "services": "Developer of master planned communities serving Investors, Home Builders, Home Buyers and Property Sellers."

2

10.     Defendant Metro is a business that is covered within the definition of FDUTPA. Defendant Metro has more than  25 employees and is an "employer" within the meaning of the Florida Whistleblower Act, §448.101-105 *et seq.*

11.     Apparently for tax reasons and to accommodate various investors, Metro has a number of entities that are all so closely related in its operations and activities as to be a single entity controlled by Metro.  This includes, but is not limited to the interlocking ownership and control, the same management team, the same HR staff, the same HR policies and procedures, the same employee benefits, the same provider of benefits, the same address and the same bank "Valley National Bank."  In fact, all of these  entities or "communities" are included on Metro's webpage and printed brochure, as Metro invites the reader to "explore the best of our communities. From active and adventurous to restful and relaxed, every lifestyle finds its home at Metro."

12.     Metro classifies some of its workers as "employees" while classifying other workers as "independent contractors."  This was and is done to avoid the payment of taxes to the US and Florida taxing authorities and to deny some of its workers with employee benefits (and monies) afforded to other workers.

13.     Defendant, John Ryan, is the CEO of Metro and controlled the company's payroll practices and was vested with ultimate decision-making and authority for Metro.

14.     Plaintiff was hired by Metro in 2014  to work as the Company's Marketing Director. She was fired on April 28, 2020.  Instead of being properly classified as an "employee," she was told by the CEO, John Ryan, that if she wanted to work for Metro, she needed to be an "independent contractor" and form her own LLC.  Plaintiff created Austin Marketing, LLC solely for the purpose of working for Metro and collecting her compensation from Metro Development

3

Group. Plaintiff submitted a monthly salary invoice to Metro Development Group and Metro directed its accounting and finance department to pay Plaintiff (via Austin Marketing) a total of $9,000 a month. Metro determined which of its entities were to pay Plaintiff the total of $9,000 a month and Plaintiff played no role in that decision. Plaintiff performed no work for any other employer other than Metro during her 6 years of employment with Metro. Metro's clear purpose of this required arrangement was the Company's avoidance of all employment laws, payroll taxes, social security taxes, Medicare taxes, state unemployment insurance and worker's compensation funds. In fact, Metro is in violation of the law because it has failed to make federal tax deposits and federal tax reporting concerning Plaintiff and all other alleged "independent contractors." Metro has also failed to make timely (or any) income and FICA tax deposits for Plaintiff and all other alleged "independent contractors." In addition, Metro has failed to make timely (or any) FUTA tax filings or deposits for Plaintiff and all other alleged "independent contractors." Due to her misclassification, Metro also did not provide Plaintiff with annual W-2 forms which must be distributed by January 31 of the year following the calendar year covered by the form. In fact, Metro improperly filed 1099 forms on behalf of Plaintiff and filed fraudulent information returns with incorrect amounts in violation of 26 U.S.C. § 7434 *et. seq.* In addition, Metro did not provide Plaintiff with benefits afforded its other workers who were properly classified as "employees," including but not limited to health insurance and 401k.

15.     Defendant Ryan told Plaintiff that she did not need the Company's health insurance because she was married and could get such insurance through her husband's company. This reason was made clearer when Defendant Ryan advised Plaintiff that the only reason the other people on her team were not also independent contractors was because they were unmarried. Thus, in the classification as an "independent contractor," Plaintiff suffered actual damages.

4

16.     In connection with her FWA claim, Plaintiff was fired in retaliation due to her objections and refusal to engage in Defendant Metro's illegal actions. The firing took place within days of her complaints to management. Specifically, Plaintiff objected to Defendant Ryan and Ms. Anne Boyle, HR Manager, in March and April, 2020 about the misclassification. Plaintiff had complained and objected to Mr. Ryan, who ignored her request and continued to pay her as an independent contractor. Plaintiff also had email communications with HR's Ms. Boyle in late April, 2020. Plaintiff objected on April 22, 2020 that she did not want to be misclassified as an independent contractor: "When every new junior hire is an employee with benefits and I'm still sidelined as a contractor it stings and this issue magnifies it a lot." Ms. Boyle told Plaintiff that she was better off as an independent contractor than an employee to get more money since it is not from Metro and said to "take advantage of the benefits of your husband's company."

17.     Plaintiff was fired days later. This termination was malicious and willful and in violation of the FWA. As a result, Plaintiff has suffered damages.

18.     Plaintiff's last day of employment for Metro was April 28, 2020. Metro had always paid Plaintiff her $9,000/mo. on a monthly basis. However, despite numerous requests for her last month's compensation of $9,000, Metro ignored, delayed and refused to timely pay her. Checks were not mailed to Plaintiff until June 17, 2020 and received by her attorney on June 18, 2020 (although some of the checks were dated more than a month earlier). This delay was intentional and to intimidate Plaintiff and get her to give up her right to sue Metro and/or Mr. Ryan.

19.     Plaintiff is still owed a pro-rata amount for her 2020 bonus (based on a total of $20,000) for a total of approximately $6,668.00. She is also due expenses in an amount of $2,796.00. In addition, after being fired, Plaintiff performed work for Metro in transferring all

the passwords from the various accounts to Metro. Plaintiff asked Metro how they would be paying her for her time spent, but there was no answer and no payment. Plaintiff is entitled to be paid for this additional work which took approximately 6 hours for a total of $312.00.

20.     Plaintiff's unpaid wages for transferring the passwords, unpaid expenses, and her unpaid bonus constitute "wages" under Florida common law, as well as under Fla. Stat. § 448.08. Defendant Metro's failure to pay Plaintiff her wages and expenses was willful as shown by its failure to withhold her $9,000 payment for some 7 weeks and its continued failure to pay her for the work she has performed (as Metro has demanded) since her termination, for her unpaid bonus, unpaid expenses and vacation days.

21.     In illegally classifying Plaintiff as an independent contractor, Metro intentionally sought to deny Plaintiff and did deny Plaintiff certain benefits that have directly led to damages suffered by Plaintiff. Specifically, there was no health insurance, no 401k, no FICA payments (Federal Insurance Contribution Act in which the employer is responsible for 6.2% for Social Security taxes and 1.45% for Medicare taxes for each of its employees). In addition, Defendant Metro was scamming the US government out of hundreds of thousands of dollars by classifying Plaintiff and others as "independent contractors." In fact, Metro has failed to pay any monies attributable to Plaintiff including, the deduction of taxes, payment of unemployment compensation and workers compensation to the appropriate taxing authorities. Further, Metro failed to properly classify and include Plaintiff (and others) on its Employer's Quarterly Report (Form RT-6) which addresses the Florida Reemployment Assistance Program.

22.     While Metro has claimed that Plaintiff was properly classified as an independent contractor, both the IRS 20-part test and the economic realities test shows Metro's position is wrong. In fact, Plaintiff was an employee because Defendant Metro controlled the manner in

6

which she performed her work and she was economically dependent on Metro and could not and did not hold any other jobs. The following constitute indicia of being an employee:

a. Plaintiff's business card read: "Jen Austin, Marketing Director" for "Metro Development Group." Her work email address was jen@metrodevelopmentgroup.com.

b. Plaintiff's profile and picture was included on the Company's website where she was listed as part of the "Metro Team."

c. Plaintiff was allowed paid vacation days and sick days, something not generally provided to an "independent contractor."

d. Plaintiff was reimbursed for expenses.

e. Plaintiff was always referred to as an employee at the workplace.

f. Plaintiff had two Metro Development Group employees report directly to her: Chloe Crooks, Community Relations Manager and Regan McCreight, Marketing Coordinator.

g. Plaintiff's work equipment was provided to her by Metro. She was given a desk at the Company's premises. When she was fired, she was required to return this equipment.

h. Plaintiff was required to work certain days and was further required to attend meetings, presentations and conferences.

i. Plaintiff took direction from the CEO, John Ryan and former President Greg Singleton. Mr. Ryan and Mr. Singleton were Plaintiff's direct managers as shown in emails, texts, calls, calendar-invites, meetings and direction/approval of assignments. Mr. Ryan had total control over Plaintiff's scope of work and compensation.

7

j.  Despite being required to form an "LLC" to be employed by Metro, Plaintiff was not permitted to work for any other company,  nor would she have had the time given that working for Metro was a 40+ hour work week.  She was totally dependent on Metro for her livelihood.

k.  This was a long-term relationship for which Plaintiff's services were an integral part of Metro's business as the lead marketing executive for Metro who controlled the Metro marketing budget, marketing campaigns and directed all of Metro's outside marketing vendors.

l.  Plaintiff was not paid "per project," but instead, was paid the same $9,000 each month.

m.  Plaintiff was actually "fired" and not merely denied further projects.  Mr. Ryan announced her departure from the Company to all employees via company-wide email as if she were a fellow employee and not an independent contractor, although the reasons for her leaving the company were falsely stated in the email.

n.  Plaintiff received emails directed to "MDGFL," which were sent to all employees at Metro.

o.  Plaintiff won awards as the Marketing Director of Metro including the Tampa Bay Builder Association's Marketing of the Year 2018 and 2019. Metro Places facebook page shows that Plaintiff's award is included with awards received by Greg Singleton and Chloe Crooks, both of whom were classified as  "employees" of Metro.

23.  Plaintiff's duties were integral to Metro's business operations and included, but were not limited to:
> a.  Social media ideas, photos, content, and approval in coordination with in-house marking team.
> b.  Write copy as the "voice of Metro," responsible for all communications to public, residents, builders and media.
> c.  Managed all event planning; lead person on all events from conception through final

d. Trademarks – request, co-draft and process all trademarks with Metro's law firm and was the authorized signature on all trademark applications

e. Manage all billboards: locations, creative, budgets, dates

f. Manage all video content for movie theaters, TV, in-house presentations, YouTube, website, and social media

g. Manage all community signage with in-house marketing team

h. Manage the marketing for all sub-brands: Metro Lagoons, inPrep Academy, Metro iLights, Deputy Metro, Metro Job Fair, ULTRAFi, Connected City, etc.

i. Create, prepare and discuss personalized drafted presentations about Metro Development Group, Metro Places and its sub-brands

j. Public Speaking; events, in and out-of-town presentations; plus builder/realtor education sessions

k. Public Relations; orchestrate corporate direction, draft responses, spin negative, promote positive, create new press releases, review drafts for distribution and approve distribution lists

l. Manage Corporate Relations as the point person with all builders, Crystal Lagoons, Charter USA, etc., as it relates to marketing

m. SEO Management

n. Digital Marketing – execute plan, budget, design

o. Manage all website and social media analytics

p. Vanity URLS; coming up with creative call-to-action sites

q. Manage and process all proposals/invoices

r. Create new ads, new ideas, new campaigns - -keeping the brand fresh

s. Website audits- always making sure all websites are correct, up-to-date and responsive

t. Manage and execute corporate sponsorships and partnerships

u. Manage and execute photo shoots/video shoots and VO and music

v. Community Name, Street Names, Logos

w. Courtesy management/processing of Encore AP

24. Thus, rather than being an independent contractor who was in business for herself, Plaintiff was an "employee" of Defendant Metro.

25. As an employer, Defendant Metro had a legal obligation under the Internal Revenue Code as well as Florida law to deduct all applicable employment taxes from Plaintiff's earnings. Defendant Metro failed to do so, which has resulted in monetary damage to Plaintiff.

26. As an employer, Defendant Metro had a legal obligation to make payments towards Plaintiff's FICA payments. Defendant Metro failed to do so, which has resulted in monetary damage to Plaintiff.

27.     As an employer, Defendant Metro had a legal obligation to correctly and honestly complete the "Florida Department of Revenue Employer's Quarterly Report" RT-6. Defendant Metro failed to do so, which has resulted in monetary damage to Plaintiff.

28.     As a result of its unlawful misclassification of Plaintiff, Metro has violated the plain proscriptions of "FDUTPA", Fla. Stat. 501.201 *et seq*. through the following willful actions and omissions:

        a.   Misclassifying Plaintiff (and others as independent contractors) rather than an employee, which caused her harm by creating negative tax implications, depriving her of her right to seek benefits under the Florida Worker's Compensation program and the Florida Reemployment Assistance program, and effectively reducing her long-term contributions to the federal Medicare and Social Security programs, when she was entitled to all of these benefits as matter of law by virtue of her status as employees; and also denying her health benefits and 401k plan, which were received by employees of Metro; and

        b.   Engaging in unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, thereby violating FDUTPA.

29.     In an effort to avoid providing Plaintiff with the minimum benefits and protections afforded employees, Defendant Metro has willfully, uniformly, and unilaterally classified her (and others) as an independent contractor, rather than an employee, despite the fact that the factual circumstances of the relationship between Defendant Metro and Plaintiff clearly demonstrates that Plaintiff is, in fact, an employee of the Company.

30.     By misclassifying Plaintiff (and others as independent contractors), Defendant avoided withholding employment taxes from Plaintiff's earnings. Defendant Metro avoided

paying mandatory employment taxes on Plaintiff's behalf, as it was legally required to do for all its employees under the provisions of the Internal Revenue Code. See 26 U.S.C. § 3102(a) and 3492(a)(imposing a duty on employers to deduct applicable taxes from their employees' wages); 26 U.S.C. § 3401(d)(1) (defining "employer" under the IRC); 26 U.S.C. § 3121(a) (defining employee wages for the purpose of income taxation); 26 CFR §  31.3121(d)-1 (defining employees). *See also* IRS Topic No. 762: Independent Contractor vs. Employee. Metro also had a legal obligation to correctly and honestly complete the "Florida Department of Revenue Employer's Quarterly Report" RT-6. Defendant failed to do so.

31.     Defendant Metro's purpose in misclassifying Plaintiff (and others) of Metro as independent contractors, rather than properly classifying them as employees, was to save money. Specifically, by avoiding payment of all applicable employment taxes that it had a legal duty to pay on behalf of Plaintiff by virtue of her status as an employee, Defendant Metro saved the money that it would otherwise have spent in meeting its tax obligations in connection with her employment. Moreover, this intentional misclassification of employees as independent contractors helped Defendant Metro acquire a competitive advantage in the marketplace. Lastly with this misclassification, Metro did not pay Plaintiff other benefits (health insurance and 401k) afforded to its other employees.

32.     In purposely avoiding payment of the mandatory employment taxes that it was legally obligated to pay on behalf of Plaintiff (and others) in order to save money for its business, Defendant Metro simultaneously ensured that its overall cost of employing workers remained consistently lower than those of other employers in Hillsborough County, all the while depriving Plaintiff (and others) of benefits to which, as an employee Plaintiff (and others) were entitled by law.

33. These unjust actions (and inactions) by Defendant Metro have directly resulted in economic damages to Plaintiff in violation of FDUTPA. Defendant Metro's actions were willful and showed reckless disregard for the provision of FDUTPA.

34. Defendant Metro also failed to timely pay Plaintiff wages in the amount of $9,000 to which she is entitled by law. She worked for the month of April, 2020, was fired thereafter and, despite numerous demands for payment of wages of $9,000, was not paid until 7 weeks later. She is also entitled to a pro-rata of her annual bonus for a period of four months, but has not received such bonus. Lastly, as an employee, she would have been entitled to vacation pay. She is thus entitled to accrued unused vacation pay.

35. In addition to wages, Plaintiff is also entitled to the reimbursement of expenses that were incurred on behalf and for the benefit of Metro. Despite numerous demands for payment of the reimbursement of those expenses, some were finally paid 7 weeks later. However, Metro still owes Plaintiff $2,796.00.00 for expenses.

36. After being terminated by Metro on April 28, 2020, Plaintiff was asked to perform additional services including working with Ben Simon, a Metro vendor from CEA and GoDaddy Support Team Members to transfer domain names to Metro. Plaintiff did so and asked Metro, on many occasions, how she was going to be compensated for this work. She continued to work on this project even though Metro did not respond to her Plaintiff's request for payment, so that there would be no delay in getting the information to Metro. Plaintiff is entitled to $364.00 for the payment of wages in her performance of work during the time period of June 10, 2020 through June 22, 2020.

37. All of the above actions taken by Defendant Metro were facilitated and condoned by Defendant Metro and John Ryan and Ann Boyle, which deprived Plaintiff of equal

terms and conditions of her employment as enjoyed by other "employees," and also resulted in retaliation after Plaintiff's complained and objected to practices which were in violation of law, rule or regulation in violation of the FWA.

38.     At the time of her termination, Defendant Ryan told Plaintiff that he had made numerous statements about her character and her profession to third parties, all of which were untrue and all of which were made to defame her and cast her in a bad light.  On April 24, 2020 Mr. Ryan verbally attacked and threatened Plaintiff in the boardroom of the Metro's offices in plain view and earshot of other co-workers, including  Kartik Goyani, Ted Sanders and Anne Boyle. Mr. Ryan wrongfully accused Plaintiff of theft and the misappropriation of funds, lying, and withholding of information, all of which was shown to be untrue. These false statements were made immediately following Plaintiff's complaints about being classified as an "independent contractor." Mr. Ryan told Plaintiff on April 28, 2020 that he shared the incident about the alleged wrongdoing with at least five people in their industry, effectively telling shared contacts about criminal and immoral actions by Plaintiff which stands in contrast to an otherwise perfect tenure at Metro Development Group and reputation in her field as shown in the responsibilities she was tasked with, the budgets she managed, the awards she won and the raises/bonuses she received.

39.     Plaintiff purchased a puppy on or about May 9, 2019.  The puppy was to remain in the possession of Plaintiff (and her three young boys who have grown extremely attached to this dog). It was agreed that the dog would be used in Metro's marketing ads but would remain in the possession and property of Plaintiff and her family. Defendant Metro reimbursed Plaintiff for certain expenses related to this dog. This payment for expenses incurred by Plaintiff relating to the dog, does not give ownership rights to Metro. At the time Plaintiff was

fired, Metro alleged that the dog was the property of the Company and must be returned to the Company immediately. As set forth in Count VI, declaratory relief is required to determine which party is the rightful owner of the dog.

40.    As a result of these violations of state and federal law, Plaintiff retained the undersigned counsel to prosecute these claims and has agreed to pay them a fee. Plaintiff has satisfied all conditions precedent, or they have been waived.

## COUNT I:  CIVIL DAMAGES FOR FRAUDULENT FILING OF INFORMATION RETURNS WITH INCORRECT AMOUNTS, 26 U.S.C. § 7434 et seq.

41.    Plaintiff realleges and readopts the allegations of paragraphs 1 through 14, 21 through 27, 29, 30, 31, 32 and 40  of this Complaint as though fully set forth herein.

42.    Pursuant to 26 U.S.C. § 7434, "[if] any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such a return."

43.    Here, Defendants Metro and Ryan violated 26 U.S.C. § 7434 in that they: (i) issued information returns for tax years 2014 to 2019; (ii) the information returns were fraudulent and the amounts incorrect; and (iii) the Defendants willfully issued fraudulent information returns with incorrect amounts.  The amount of salary listed on the information returns for these years was incorrect and overstated by Defendants, causing monetary damage to Plaintiff.

44.    During the time period in which Plaintiff was employed by Defendant Metro, Defendant Metro and Defendant Ryan each knew that they were improperly characterizing Plaintiff as an independent contractor rather than an employee so that Defendant Metro could intentionally avoid complying with federal and state laws including, but not limited to the

14

failure to pay Federal payroll taxes, social security taxes, and state unemployment taxes. Defendants knew that Plaintiff was not properly classified as an independent contractor because Defendant Ryan and Defendant Metro dictated to Plaintiff the manner in which she was to perform her job and, to avoid paying taxes, willfully issued Plaintiff 1099-forms. Defendant Ryan, as the CEO, had operational control including control over employment practices and compensation and had control over the filing of the fraudulent returns. In fact, Plaintiff brought this to the attention of Defendant Ryan and the HR Department at Metro when she objected to being classified as a "1099/independent contractor."

45.     Defendants filed fraudulent information returns concerning Plaintiff when, for tax years 2014-2019, it issued 1099-MISC forms (instead of W-2 forms) and identified and misclassified her as an "independent contractor." This constitutes a fraudulent information. Defendant Metro did so to avoid the payment of taxes. In addition, the information return contains intentional misrepresentations by Defendants concerning the amounts purportedly made to Plaintiff as salary. Instead, Defendants were required, by law, to file an information return under § 6724(d)(1)(A) and §6051 for "receipts for employees." 25 U.S.C. §6051 provides: "Every person required to deduct and withhold from an employee a tax under section 3401 or 3402, of who would have been required to deduct and withhold a tax under section 3402 .... Shall furnish to each such employee in respect of the remuneration paid by such person to such employee during the calendar year, on or before January 31 of the succeeding year, or, if his employment is terminated before the close of such calendar year, within 30 days after the date of receipt of a written requires from the employee if such 30-day period ends before January 31, a written statement showing the following..."

46.     Defendants are equally and coextensively responsible for the bad faith and willful filing of these fraudulent information returns that contained the incorrect amounts during Plaintiff's employment.  Plaintiff complained about Defendants' illegal actions but instead of changing their practices, Defendants fired her.

47.     In particular, for tax year 2019, Plaintiff's compensation was $9,000 a month plus a $20,000 bonus, for a total of $128,000.  However, Defendants incorrectly reported her income for tax year 2019 as being a total of $153,360.81 which is an overage of $25,360.81.  Discovery will reveal that this was done for each of the years Plaintiff was misclassified as an "independent contractor."  The 1099-MISC forms for 2014-2018 are in the possession of Defendants and will have to be produced during discovery.  As a result of Defendants' conduct, Plaintiff has incurred additional taxes.

48.     To the extent required by law, per 26 U.S.C. § 7434 (d) a copy of this Complaint shall be filed with the Internal Revenue Service: "Any person bringing an action under subsection (a) shall provide a copy of the complaint to the Internal Revenue Service upon the filing of such complaint with the court."

WHEREFORE, Plaintiff demands against Defendant Metro and Defendant Ryan:

a.  Costs attributable to resolving deficiencies and damages resulting from the additional  tax debt and additional time/expenses associated with any necessary correction;

b.  Payment to Plaintiff of the amounts of taxes (plus interest) she paid during the past 6 years due to Defendants' fraudulent actions;

c.  That Defendants Metro and Ryan be ordered to take all the necessary steps to correct the above identified information returns;

d.  Damages to Plaintiff for the "correct amount which should have been reported in the information return" under 26 U.S.C. § 7434(a);

e.  Statutory damages pursuant to 26 U.S.C. § 7434(b);

f.  All costs and attorneys' fees incurred in prosecuting this claim, 26 U.S.C. § 7434 (b)(3); and

g.  For such further relief as the Court deems just and equitable.

## COUNT II: VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT ("FDUTPA")

49.  Plaintiff realleges and incorporates by reference paragraphs 1 through 15, 21 through 33 and 40 of this Complaint as though fully set forth herein.

50.  This is an action against Defendant Metro for damages plus attorneys' fees and court costs under the Florida Deceptive and Unfair Trade Practices Act, FDUTPA, F.S. Ch. 501 *et seq.*

51.  FDUTPA § 501.201 *et seq.*, Florida Statutes, is a remedial statute intended to protect persons from those who engage in "unconscionable, deceptive, or unfair acts or practices in the conduct of any trade of commence." §501.202(2). A deceptive practice is "one that is likely to mislead" and an unfair practice is "one that offends established public policy" and/or "is immoral, unethical, oppressive, unscrupulous or substantially injurious."

52.  FDUTPA makes it unlawful to engage in "unconscionable acts or practices and unfair or deceptive acts or practices in the conduct of any trade or commerce...." Fla Stat. § 501.204.

53.     Plaintiff is a "person" within the meaning of FDUTPA, Fla. Stat. § 510.211(2).
[1] Plaintiff, in her position as Marketing Director, was performing commercial activity.

54.     Defendant Metro is engaged in "trade or commerce" within the meaning of FDUTPA. "Trade or commerce" includes "advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity , or thing of value, wherever situated." Fla. Stat. § 501.203(8).   Defendant Metro engaged in unconscionable acts or practices and unfair or deceptive acts or practices in the conduct of its trade or commerce by misclassifying Plaintiff (and others) as "independent contractors."

55.     In violation of FDUTPA, Defendant Metro: (i) committed a deceptive unfair act while conducting trade/commerce; (ii) the deceptive and unfair act is the cause of Plaintiff's injury and damages; and (iii) Plaintiff has suffered actual damages as a direct result including but not limited to, receiving benefits/monies afforded to employees of Defendant Metro, including but not limited to:  401k; health benefits; vacation pay; the "employer" payment of social security taxes;  and the "employer" payment of FUTA taxes.

---

[1] To the extent Defendant argues that Plaintiff is not an "individual" under the FDUTPA and does not have standing to sue,  the Middle District of Florida has held that a plaintiff does have standing in the employment context in which such plaintiff is seeking damages as the result of being misclassified as an "independent contractor." *Bishop v. VIP Transp. Grp.,* Case. No. 6:15-cv-2118-Orl-22KRS, 2016 U.S. LEXIS 42313 (M.D. Fl. March 15, 2016)recommendation adopted by 2016 U.S. Dist. LEXIS 42310 (M.D. Fla. March 2016)(the court addressed the issue of whether an employer's misclassification of an employee as an independent contractor could be the basis of a FDUTPA claim for damages). *Ordeus v. Gulf Coast Transp., Inc.,* Case No. 8:16-cv-1061-T-24 TBM, 2016 U.S. Dis. LEXIS 101080 (M.D. Fl. August 2, 2016)(Court rejected Defendant's argument that Plaintiffs were not covered by FDUTPA because they were "employees" and not "consumers"); *Bailey v. St. Louis,* No. 2D13-612, 2016 Fla. App. LEXIS 1375 (Fla 2nd Dist. Ct. App., February 3, 2016)(the 2nd DCA concluded that "section 501.211(2) evinces a legislative directive that the remedy of damages is not limited to a consumer." *See also Off Lease Only, Inc. v. LeJeune Auto Wholesale, Inc.,* No. 3D15-532, 187 So. 3d 868 (Fla. 3d Dist. Ct. App. Feb 24, 2016)(FDUPTA "no longer requires one to be a 'consumer' to maintain an action for damages under FDUTPA").

56.     In fact, the acts of Metro were unfair under FDUTPA in that its practice of misclassifying Plaintiff and others is so unfair in that it "offends public policy and is immoral, unethical, oppressive, unscrupulous and substantially injurious."

57.     In an effort to avoid providing Plaintiff with the minimum benefits and protections afforded employees under Florida law, Defendant Metro has willfully, uniformly, and unilaterally classified Plaintiff (and others) as independent contractors rather than employees, despite the fact that the factual circumstances of the relationship between Defendant Metro and Plaintiff (and others) clearly demonstrates that Plaintiff is an employee of the Company.

58.     The actions of Defendant Metro in misclassifying Plaintiff (and others) as independent contractors, are unfair and deceptive trade practices prohibited under law.

59.     By and through Defendant Metro's unfair, unlawful and/or deceptive business practices as described herein, Plaintiff (and others) have suffered injuries in fact in that Defendant has obtained money and/or services from Plaintiff (and others) and has deprived Plaintiff (and others) of valuable rights and benefits guaranteed to them by law.

60.     All of the acts described herein are unlawful and in violation of public policy, and in addition, are immoral, unethical, oppressive, fraudulent, and/or unscrupulous, and thereby constitute unfair, unlawful and/or deceptive business practices in violation of FDUTPA.

61.     Plaintiff is entitled to and does seek such relief as may be necessary to restore to her the money Defendant Metro has acquired, or of which Plaintiff has suffered by means of the above-described unfair, unlawful and/or deceptive business practices.  In particular, as of the filing of this Complaint, Plaintiff has knowledge that the actual damages she has suffered over the last 6 years include economic damages, including but not limited to, loss of health

insurance benefits, loss of 401k, vacation pay, loss of monies she had to pay in social security taxes in the amount of 6.2% (twice, since she was improperly classified as an independent contractor), loss of monies she had to pay in Medicare taxes in the amount of 1.45% (twice, since she was improperly classified as an independent contractor); and other monetary benefits afforded to employees of Metro but not to Plaintiff.

62.     There is an actual controversy concerning whether Defendant Metro improperly and illegally classified Plaintiff as an independent contractor. Plaintiff is entitled to and hereby seeks a declaration that she was misclassified and that the business practices described above are unfair, unlawful and/or deceptive.

WHEREFORE, Plaintiff demands

a. Judgment against Defendant Metro and a determination by this Court that Plaintiff was misclassified;

b. Judgment against Defendant Metro and a determination by this Court that Defendant Metro violated the FDUTPA;

c. Actual damages suffered by Plaintiff including but not limited to those in paragraph 61 above (plus interest);

d. All costs and attorneys' fees incurred in prosecuting these claims; and

e. For such further relief as this Court deems just and equitable.

## COUNT III: VIOLATION OF THE FLORIDA WHISTLEBLOWER ACT,
### Fla. Stat. § 448.102(3)

63.     Plaintiff realleges paragraphs 1 through 17, 21-27, 29-32 and 40 above of this Complaint as though fully set forth herein.

64.     Florida Statute, §448.101-105 is known as the Florida Whistleblower Act ("FWA"). Section 448.102(3) makes it unlawful to fire an employee who objected to or refused to participate in any activity, policy, or practice of the employer which is in violation of a law, rule or regulation.

65.     Plaintiff engaged in statutorily protected expression and complained/objected to Defendant on a number of occasions as set forth in paragraphs 14, 15, 16, and 17 above and incorporated herein.

66.     Plaintiff suffered an adverse employment action when Defendant terminated her effective April 28, 2020 because of her objection to activities, policies and practices of Metro which are in violation of a law, rule or regulation, all in violation of Fla. Stat. § 448.102(3) *et seq.*

67.     The termination of Plaintiff was causally linked to the statutorily protected activity, that is, the objections referred to in paragraphs 14, 15, 16 and 17 above, including her protestations about being illegally classified as an independent contractor instead of an employee. She was fired days after in retaliation. Defendant and the acts and inactions of its agents were done with intent, malice and reckless disregard for Plaintiff's protected rights.

68.     The termination of Plaintiff by Defendant is in violation of Fla. Stat. § 448.102(3).

WHEREFORE, Plaintiff demands judgment against Defendant Metro as follows:

a. For monetary damages to compensate Plaintiff for all lost salary and benefits from the time Defendant's improper conduct commenced to the time of the award, plus all accrued interest thereon;

b. Back pay and front pay and compensatory damages;

c. Costs and attorneys' fees, all prejudgment interest, and

d. For such further relief as this Court deems just and equitable.

## COUNT IV: DEFAMATION AGAINST JOHN RYAN

69.    Plaintiff realleges paragraphs 1 through 15 and 38  above of this Complaint as though fully set forth herein.

70.    This is a claim for defamation against Defendant Ryan in that (1) he published a false statement; (2) about Plaintiff; (3) to a third party; and (4) that the falsity of the statement caused injury to Plaintiff.  Mr. Ryan is liable for defamation *per se* in that he has published and accused Plaintiff of committing a crime and has imputed to her conduct and characteristics incompatible with the proper exercise of her lawful position. He is also liable for defamation of character in that he made false statements to third parties concerning Plaintiff that have injured her character and reputation.

71.    On April 24, 2020 Mr. Ryan verbally attacked and threatened Plaintiff in the boardroom of the Metro's ooffices (2502 N. Rocky Point Drive, Suite 1050, Tampa, FL  33607) in plain view and earshot of other co-workers. Mr. Ryan wrongfully accused Plaintiff Austin of *theft* and the *misappropriation of funds* in re-hiring a vendor as a short-term assistant to aid in social media photos and posts. This individual had previously done photography for Metro

22

including award-winning office photos for "Coolest Office Space in Tampa Bay" and corporate headshots, including photos of Defendant Ryan. Plaintiff showed proof that all money previously paid to this individual was in-line with expense reports and never used as compensation for other work Plaintiff had this person do for her or her family. Ms. Boyle was always aware of the relationship between this vendor and Plaintiff. Defendant Ryan was advised of the relationship by Ms. Boyle and he then used that information to yell profanities at Plaintiff and threatened her in close range. Defendant Ryan has never asked or cared about any vendor utilized by Plaintiff before and, in fact, holds all managers accountable for their outside contractors never concerning himself with the resumes of their selected teams. Up until this point Plaintiff was entrusted with handling millions of dollars and overseeing several companies, vendors and contractors including CEA, Aqua, Tucker/Hall, Trenam Law, Sign Solutions, Spectrum, Cole Media, Inpulse Entertainment, StudioMax, Cecillian Worldwide, Cohen Advertising, Encore, Biscayne Homes, Conroy/Martinez, B2 Communications, Outfront, ClearChannel, etc.. Plaintiff has never misappropriated funds. The verbal attack was designed to defame Plaintiff and to force Plaintiff to quit her job after she complained about her illegal classification. When she did not quit, she was defamed and fired.

Each of Defendant Ryan's accusations of theft and misappropriation of funds were uuntrue. These false statements were made following Plaintiff's complaints about being classified as an "independent contractor." Defendant Ryan made these false and malicious statements to third parties knowing they were false or with a reckless disregard for the truth, without reasonable grounds for the Defendant Ryan to believe they were true, and with intent to injure and defame Plaintiff.

72. Defendant Ryan told Plaintiff on April 28, 2020 that he repeated and shared his defamatory statements and accusations about the theft/misappropriation of monies with at least five people including Rob Ahrens, Mike Lawson, Kartik Goyani, Chloe Crooks, Mark Metheney, Nancy Walker and his corporate consultant, all of whom are in their industry, effectively telling shared contacts about perceived immoral and illegal actions by Plaintiff which stands in contrast to an otherwise perfect tenure at Metro Development Group and reputation in her field as shown in the responsibilities she was tasked with, the budgets she managed, the awards she won and the raises/bonuses she received. Chloe Crooks was fired one week after Plaintiff for alleged "insubordination" after she told Mr. Ryan that she was witness to some of the activity leading up to Plaintiff's termination which were in direct contrast to Defendant Ryan's account.

73. Defendant Ryan's comments about Plaintiff concerning her profession are defamatory *per se* for which malice is presumed and damages are to be awarded. Each of the comments concerning Plaintiff's profession were untrue and made solely to harm Plaintiff in her profession and livelihood and future employment. Plaintiff has been damaged by these false statements because the statements attribute conduct, characteristics and conditions incompatible with the proper exercise of her profession.

74. In addition, Mr. Ryan's comments about Plaintiff's theft/misappropriation are defamation of her character in that they are untrue statement made to persons who did not have a right or a need to know and have caused damage to Plaintiff in her reputation and character.

24

WHEREFORE, Plaintiff demands judgment against Defendant Ryan as follows:

a.      Awarding Plaintiff all compensatory damages including consequential and incidental damages as a result of Ryan's defamation *per se*; and for the defamation to her character;

b.      Awarding Plaintiff compensatory and punitive damages (upon proper motion);

c.      Granting preliminary and permanent injunctive relief to prevent Defendant Ryan from making further defamatory remarks; and

d.      For such further relief as this Court deems just and equitable.


## COUNT V: UNPAID WAGES UNDER FLORIDA COMMON LAW


75.    Plaintiff realleges  and readopts the allegations of paragraphs 1 through 15, 34, 35, 36  and 40 of this Complaint as though fully set forth herein.

76.    Plaintiff worked for Defendant Metro June 23, 2014 thru April, 28, 2020, when she was illegally fired.  After that date, Plaintiff continued to perform services for Metro, at the request and direction of Metro.  She has worked with Metro's Ben Simon and outside vendor, GoDaddy, to transfer all passwords to Metro.

77.    Plaintiff had asked Metro how they were going to compensate her for this work. There was no response.  However, not wanting to harm Metro in any way, Plaintiff continued to perform services even after her termination.

78.    As of this date, Defendant Metro failed to compensate Plaintiff with all "wages" owed to her in the amount of $364.00.

79.     Metro has also failed to compensate Plaintiff for her bonus for the time period of January 1, 2020 to April 28, 2020 in the amount of approximately $6,668.00.

80.     Plaintiff has also not received vacation pay for accrued, unused vacation; a monetary benefit provided to employees.

81.     Metro has also failed to pay Plaintiff for $2,796.00 in expenses she incurred on behalf of Metro but was not paid.

WHEREFORE, Plaintiff seeks judgment against Defendant Metro as follows:

a.   For all expenses that have not been paid to Plaintiff, plus interest;

b.   All wages due and owing, plus interest;

c.   Liquidated damages (x2) for such wages, plus interest;

d.   Costs and attorneys' fees incurred in prosecuting these claims, in accordance with Fla. Stat. 448.08; and

e.   For such further relief as this Court deems just and proper.


## COUNT VI: DECLARATORY RELIEF

82.     Plaintiff realleges and readopts the allegations of paragraphs 1 through 7 and paragraph 39 of this Complaint as though fully set forth herein.

83.     This is an action pursuant to Florida Statue s. 86.021 which states:

Any person claiming to be interested or who may be in doubt about his or her rights under a deed, will, contract, or other article, memorandum, or instrument in writing or whose rights, status, or other equitable or legal relations are affected by a statute, or any regulation made under

statutory authority, or by municipal ordinance, contract, deed, will, franchise, or other article, memorandum, or instrument in writing may have determined any question of construction or validity arising under such statute, regulation, municipal ordinance, contract, deed, will, franchise, or other article, memorandum, or instrument in writing, or any part thereof, and obtain a declaration of rights, status, or other equitable or legal relations thereunder.

84.     A dispute has arisen between Plaintiff and Metro in which Metro has claimed that a dog purchased by Plaintiff, living with Plaintiff and cared for by Plaintiff, must be returned to Metro, allegedly because Metro claims that it has paid some of the expenses for this dog. However, money spent on the dog by Metro was for the executed marketing campaign to benefit Defendant Metro.

85.     Plaintiff purchased a puppy on or about May 9, 2019 (Exhibit A).  The puppy was to remain in the possession of Plaintiff (and her three young sons who have grown extremely attached to this dog). However, it was agreed that the dog would be used in Metro's marketing ads. Defendant Metro reimbursed Plaintiff for certain expenses relating to this dog and the marketing ads. This payment for expenses incurred by Plaintiff relating to the dog, does not give ownership rights to Metro.  Defendant Metro has not paid Plaintiff for the time she spent caring for the dog for more than a year.

86.     At the time Plaintiff was fired, Metro alleged that the dog was the property of the Company and must be returned to the Company immediately.

87.     All of the purchase documents, "Health Certificates" "Sale" documents, medical certificates are all in the name of Jen Austin, who has cared for the dog.  Jen Austin is the legal

owner of the dog and has solely cared for the dog. No one else at Metro has played any role in the care of this dog.

88.     There is no contract or any documents between Metro and Plaintiff addressing the issue of who gets to keep the dog if Plaintiff was terminated. That is because the dog, was at all times, the property of Jen Austin.

89.     Defendant Metro is clearly taking this ridiculous position to further harm Plaintiff (and her three young sons).

90.     There is accordingly a bona-fide actual, present practical need for this declaration from the Court. There is an actual controversy between the parties having adverse legal interests. Plaintiff's interests are in jeopardy, as Defendant Metro has demanded the return of the dog.

91.     The declaration concerns a present, ascertained, or ascertainable set of facts  or present controversy. Thus, Plaintiff asks that this Court declare that the dog is the property of Plaintiff and is not to be returned to the Company and award her fees and costs under Fla. Stat. § 86.081.

92.     If, on the other hand, this Court declares that the dog must be returned to Defendant Metro, then Plaintiff is due and owing wages for taking care of the dog since May, 2019 through the present. The damages are a reasonable hourly rate for the care of a dog x 24 hours a day x 400 days (and counting).

WHEREFORE, Plaintiff respectfully requests that this Court enter a declaratory judgment and damages, or in the alternative, as follows:

a.  Declaring that the dog is the property of Jen Austin;

28

b.  Declaring that there is no money due and owing to Defendant Metro because all reimbursements paid by Metro to Plaintiff were for the benefit and marketing of Metro;

c.  Awarding Plaintiff fees and costs under Fla. Stat. § 86.081;

d.  If, in the alternative, this Court finds that the dog is the property of Defendant Metro and must be returned to Metro, then Plaintiff is entitled to wages for taking care of the dog since May, 2019 through the present.  The damages are a reasonable hourly rate for the care of a dog x 24 hours a day x  400 days (and counting) plus liquidated damages (x2) for such wages in addition to all costs and attorneys' fees  incurred in prosecuting these claims, in accordance with Fla. Stat. § 448.08; and

e.  For such further relief as this Court deems just and proper.

## JURY DEMANDED

Plaintiff demands a trial by jury as to all issues so triable

> SAADY & SAXE, P.A.
> */s/ Claire Saady*
> CLAIRE SAADY, ESQ.
> Fla. Bar No. 102954
> ONE CENTRAL TOWER
> 360 Central Avenue, Suite 1160
> St. Petersburg, FL  33701
> Tel: (727) 291-1900
> E-Mail: claire@saadyandsaxe.com
> *Attorneys for Plaintiff*

29